## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **GABRIEL CHINCHILLA,** | |
| **Plaintiff,** | Case No. |
| **vs.** | |
| **CITY OF CHICAGO,** **Chicago Police Officers BOJAN** **SIMIC #12847, RICHARD BANKUS** **#6769, and Unknown Chicago** **Chicago Police Officers,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

NOW COMES Plaintiff, GABRIEL CHINCHILLA, by and through his attorneys, BREEN & PUGH and STEVEN H. FINE, complaining of the CITY OF CHICAGO, Chicago Police Officers BOJAN SIMIC, RICHARD BANKUS, and Unknown Chicago Police Officers (collectively "Defendants"), and alleges as follows:

### Introduction

1.     On the evening of May 31, 2020, at the corner of Hubbard and Clark Streets in Chicago's River North neighborhood, Plaintiff Gabriel Chinchilla was brutally assaulted and beaten with batons by on-duty Chicago police officers in broad daylight while being filmed by citizens, the news media, and by surveillance cameras from a local business. The Chicago police officers involved in this case knew that their actions would not land them in any trouble and, as such, they openly and wantonly beat Plaintiff in public on video.

2.      Chicago Police Officers Bojan Simic, Richard Bankus, and other Unknown Chicago Police Officers beat Plaintiff about the head and body with police batons while Plaintiff was lying helpless on the ground.

3.      As a result of Defendants' conduct, Plaintiff suffered severe injuries, which included injuries to his head, contusions and lacerations to his body, and emotional trauma.

## Jurisdiction and Venue

4.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's constitutional rights as secured by the United States Constitution.

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and his state law claims all arise out of the same facts as his federal claims.

6.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this District, and because at least one of the Defendants resides in this District.

## Parties

7.      Plaintiff GABRIEL CHINCHILLA is twenty-two (22) years old. He resides in Chicago, Illinois and is a United States citizen.

8.      Defendants were, at all relevant times, employed by the City of Chicago as sworn police officers. All of the Chicago Police Officers are sued in their individual capacities.

9.     Defendant City of Chicago is a municipal corporation of the State of Illinois and is and was, at all relevant times, the officer defendants' employer. The City of Chicago maintains, manages and/or operates the Chicago Police Department.

**Facts**

10.     In the wake of the police killings of George Floyd, Breonna Taylor, and countless others, residents of the City of Chicago took to the streets to peacefully protest in downtown Chicago over the weekend of May 29-31, 2020.

11.     Officers from the Chicago Police Department responded to the protests with brutal force, violence, and unconstitutional tactics intended to injure and silence protestors lifting their voices against police violence.

12.     On the evening of May 31, 2020, at approximately 8:00 p.m., Plaintiff joined a peaceful protest he encountered in the River North neighborhood of Chicago's downtown area. Plaintiff joined the march to express his opinion that the police must be held accountable to the communities they serve and to express his support for victims of police violence.

13.     When Plaintiff reached an area just south of the Hubbard and Clark intersection he observed a man lying on the sidewalk and surrounded by police. As Plaintiff attempted to assist the man, police used their bikes to push him and others away from the area. Additional officers arrived on the scene dressed in full riot gear, armed with pepper spray and riot batons.

3

14.     After the arrival of these additional officers in riot gear, officers became increasingly aggressive toward the crowd and Plaintiff. Chicago police officers, including Defendants, shoved Plaintiff from behind and knocked him to the ground.

15.     During the beating, Defendants savagely struck him repeatedly about his head and body, struck him with riot batons, and continued to hit him while he was collapsed on the ground and in a prone position.

16.     The unjustified beating continued while Plaintiff screamed for help. At times, multiple assaulting officers beat Plaintiff simultaneously.

17.     Other individuals attempted to come to Plaintiff's aid, but no Chicago police officers ever did.

18.     After Officer Bankus violently hit Plaintiff over the head with his baton, Plaintiff quickly attempted to make his way to safety and ultimately collapsed on the southeast corner of Clark and Hubbard.

19.     Throughout the ordeal, Plaintiff did not struggle or resist Defendants in any way. Plaintiff repeatedly begged Defendants to stop. The beating continued while other officers watched this occur to Plaintiff without intervening or rendering aid.

20.     As a result of the attack, Plaintiff has sustained severe physical injuries, including a traumatic head injury, head laceration, severe leg pain, and mental anguish.

4

21.     Although Plaintiff suffered a visible injury to his head, officers failed to provide any medical treatment. Below are images of some of Plaintiff's injuries, to specifically to Plaintiff's head and leg, caused by Defendants:



22.     Also, as a result of the attack, Plaintiff sustained severe emotional injuries including, but not limited to, fear of additional attacks, fear of retaliation by the officers, fear of other members of the Chicago Police Department, humiliation, and other emotional injuries.

23.     Security cameras from a business located at the southwest corner of Hubbard and Clark captured much of the attack on videotape. The Chicago Police Department had access to the tape and several witnesses within days of the beating.

24. On information and belief, not one of Defendants reported any of the other assaulting officers' misconduct. Furthermore, non-assaulting officers failed to report any of Defendants' misconduct.

25. While this incident was reported to the City of Chicago Civilian Office of Police Accountability ("COPA"), COPA has utterly failed to maintain communication with Plaintiff.

26. As a result of the deficient investigation of Defendant officers' conduct by the City of Chicago, the complaints and evidence related to Plaintiff's beating were improperly and insufficiently addressed and/or allowed to occur without consequence.

27. The Chicago City Council has long been aware of the disciplinary failures of the Chicago Police Department. At an October 2007 City Council meeting, a Council member remarked of the Office of Professional Standards ("OPS") that "there is no follow-up [of citizen complaints], and that I think we have to move beyond the code of silence and the protection of the police officers and command staff at any cost."

28. From 2001-2006, only 0.2% of complaints against officers were meaningfully sustained (resulting in a week or more suspension), with 662 officers having 11 or more complaints against them. A brutality complaint was 94% less likely to be sustained in Chicago than in the rest of the nation.

29.   In 2007, and in response to growing issues surrounding police accountability in Chicago, the City Council enacted an ordinance to replace OPS with a civilian-run agency called the Independent Police Review Authority ("IPRA").

30.   OPS investigators simply became IPRA investigators. For years, IPRA used the OPS manual as its operational manual.

31.   Like OPS, IPRA served to protect police officers. It failed to fairly and impartially investigate citizen complaints, and it failed to promote its stated purpose of transparency and police accountability.

32.   Currently, the Civilian Office of Police Accountability is tasked with investigating improper use of force allegations against Chicago Police officers.

33.   As a direct result of the City of Chicago's failure to properly investigate claims of police brutality and misconduct, a code of silence and/or "blue shield" exists within the police department, wherein officers cover up the misconduct of their fellow officers, allowing officers to act with impunity and to believe their acts of misconduct will not be properly investigated and will go unpunished.

34.   The Chicago Police Department has a long history of covering up its officers' misconduct. Defendant City of Chicago has been aware of this widespread custom and practice for many years.

35.   In the case of *Klipfel v. City of Chicago*, et. al., 94 C 6415, former Chicago Police Department Superintendent Kline testified at his deposition that a code of silence exists within the department.

7

36. On December 9, 2015, former Mayor Rahm Emanuel admitted that a code of silence exists and has long existed within the Chicago Police Department. Mayor Emanuel stated that this tendency to ignore, deny, or cover up police officers' bad actions leads to a culture where extreme acts of abuse are more likely. A task force was created to investigate both CPD and IPRA. Mayor Lightfoot headed the task force, and it was called the "Police Accountability Task Force" ("PATF"). The PATF concluded that a code of silence exists within the Chicago Police Department. The task force found the code of silence is "institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between various police unions and the City."

37. Additionally, the task force found that IPRA "investigations are riddled with structural, cultural and procedural problems that cast doubt on the investigating agencies' intentions and integrity and larger oversight system. Misconduct goes uninvestigated despite the availability of information about these incidents; unreasonable and unjustified procedures hamper investigations, and the investigative agencies lack the resources and support to be effective and show troubling signs of bias."

38. The United States Justice Department ("DOJ") investigated the Chicago Police Department and released a report with its findings in January 2017.

39. The DOJ report concluded that IPRA did not properly investigate allegations of police misconduct. For instance, the DOJ report found that IPRA

sustained fewer than 2% of the 30,000 police misconduct complaints Defendant City received from 2011 to 2016.

40.     The DOJ report became the basis of legal action against the Defendant City by the Illinois Attorney General's Office. In January 2019, Defendant City entered into a court-approved consent decree designed to reform the Chicago Police Department.

41.     An Independent Monitoring Team ("IMT"), overseen by Judge Robert M. Dow, Jr., assesses the City and CPD's compliance with the Consent Decree in biannual reports. In the first report, the City and CPD failed to meet even preliminary compliance standards for 52 of 67 paragraphs of the Consent Decree. The City and CPD missed 37 of 50 deadlines. The second report was no better. In that report, filed June 18, 2020, the City and CPD missed 52 of 74 deadlines.

42.     CPD continues to fail at reforming its unconstitutional practices and the City of Chicago continues to be deliberately indifferent to its failures.

43.     The code of silence operates in cases like this to shield and protect Defendants, or to lessen the consequences to them by shaping the narrative in their favor. The non-assaulting officers participate in the code of silence by explicitly or implicitly agreeing to adopt a false narrative, or to conceal facts and evidence harmful to their fellow officers, in order to help them.

44.     In fact, in this case, despite multiple instances of sustained police misconduct by Defendants, the City permitted Defendants to remain on the street and continue their pattern of abuse against residents of Chicago like Plaintiff.

9

45.     The historical failures by the City of Chicago to properly investigate allegations of excessive force by its members; its long history of failing to discipline its officers for improper use of force; its failure to investigate or punish officers who participate in the code of silence to protect and conceal the misconduct of fellow officers have all contributed to the continued uses of excessive force and the continued existence of the code of silence in the Chicago Police Department and in the City's agencies. These failures by the City have encouraged officers in their belief that they can engage in misconduct, or they can help to conceal it without any consequences.

### Count I – 42 U.S.C. § 1983
### Excessive Force

46.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

47.     As described in the preceding paragraphs, the conduct of Defendants, acting under color of law and within the scope of their employment, constituted violations of the Fourth Amendment to the United States Constitution.

48.     The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

49.     As a direct and proximate result of the City of Chicago and Defendants intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits, and entitlements,

damage to his career and reputation, pain, suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States, in violation of 42 U.S.C. §1983.

**Count II – 42 U.S.C. § 1983**
**Failure to Intervene**

50.     Plaintiff realleges each of the forgoing paragraphs as if fully stated herein.

51.     Unidentified Chicago Police officers did not participate in the attack, but they, acting under the color of law and within the scope of their employment, stood by and failed to intervene.

52.     By reason of the unidentified officers' conduct, Plaintiff was deprived of his rights, privileges, and immunities secured to him by the Constitution of the United States and laws enacted thereunder.

53.     As a direct and proximate result of the City of Chicago and Defendants intentionally, knowingly, unlawfully, and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits, and entitlements, damage to his career and reputation, pain, suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States, in violation of 42 U.S.C. §1983.

**Count III – 42 U.S.C. § 1983**
**Conspiracy to Deprive Constitutional Rights**

54.     Plaintiff realleges each of the forgoing paragraphs as if fully stated herein.

11

55.     Each Defendant officer, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

56.     In furtherance of this conspiracy, each of the Defendant officers committed specific overt acts, misusing their police powers to violate Plaintiff's rights. They accomplished this goal by using excessive force on Plaintiff and unlawfully violating his rights.

57.     Each individual Defendant officer is therefore liable for violating Plaintiff's rights by any other individual Defendant officer.

58.     As a direct and proximate result of the City of Chicago and Defendants intentionally, knowingly, unlawfully, and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits, and entitlements, damage to his career and reputation, pain, suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States, in violation of 42 U.S.C. §1983.

### Count IV – 42 U.S.C. § 1983
### Policy Claim (Defendant City of Chicago)

59.     Plaintiff realleges each of the forgoing paragraphs as if fully stated herein.

60.     The misconduct of Defendant officers alleged above was undertaken pursuant to the policy and practice of Defendant City of Chicago.

61.     As a matter of both policy and practice, Defendant City encourages the type of police misconduct at issue in this case by failing to supervise, train,

12

investigate, and/or discipline Chicago police officers, and these failures constitute deliberate indifference.

62.     The following of Defendant City's policies and persistent widespread customs and practices were the driving force behind Defendant officers' misconduct and caused harm to Plaintiff:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to punish and discipline prior instances of similar misconduct adequately, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by Plaintiff, yet the Chicago Police Department makes findings

13

of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on, and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Defendants;

e. During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to supervise officers engaged in wrongful conduct properly;

f. City policymakers are aware of (and condone and facilitate by their inaction) a code of silence in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

14

g. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

h. The City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred;

i. The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct (both on duty and off duty misconduct), including the use of unlawful force. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, and failure to initiate prompt disciplinary procedures related to alleged misconduct; failure to investigate complaints against off-duty

15

officers in the same manner as complaints against citizens, and,

63.     The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians, which encouraged Defendants to believe that they could deprive Plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

64.     These policies, practices, or customs of Defendant City, individually and/or collectively, were the moving force behind Defendant officers' conduct, depriving Plaintiff of his rights under the United States Constitution.

## Count V – State Law Claim
## Battery

65.     Plaintiff realleges each of the forgoing paragraphs as if fully stated herein.

66.     As described in the preceding paragraphs, Defendant officers' conduct, acting within the scope of their employment as police officers, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Plaintiff bodily injuries.

67.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

16

68.     Defendant officers undertook the misconduct described in this Count within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

69.     As a direct and proximate result of Defendant officers' acts, Plaintiff was injured, suffering bodily injuries, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

### Count VI – State Law Claim
### Assault

70.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

71.     As described in the preceding paragraphs, the conduct of Defendants, acting within the scope of their employment as police officers, created a reasonable apprehension of imminent harm, undertaken willfully and wantonly, proximately causing Plaintiff emotional and other injuries.

72.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

73.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

74.     As a result of Defendants' conduct, Plaintiff had a reasonable apprehension that his life was in danger.

75.   Defendants undertook the misconduct described in this Count within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

76.   As a direct and proximate result of the Defendant officers' acts, Plaintiff was injured, suffered motional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

## Count VII – State Law Claim
## Intentional Infliction of Emotional Distress

77.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

78.   The conduct and actions of Defendant officers set forth above were extreme and outrageous. Defendants' actions were rooted in an abuse of power and authority and were done intentionally, willfully, and wantonly, and/or knowing that there was a high probability that their conduct would cause Plaintiff severe emotional distress.

79.   As a direct and proximate cause of the extreme and outrageous conduct of Defendants, Plaintiff was injured and experienced severe emotional distress constituting intentional infliction of emotional distress under Illinois State law.

## Count VIII – State Law Claim
## Civil Conspiracy

80.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

81.   Count VIII is alleged against all Defendant officers.

18

82.     Defendant officers together reached an understanding, engaged in and continue to engage in the course of conduct, and otherwise jointly acted and/or conspired among themselves to violate Plaintiff's rights guaranteed by the Illinois constitution.

83.     In furtherance of this conspiracy, Defendant officers, together with their un-sued co-conspirators, committed the overt acts set forth above.

84.     Defendant officers acted with malice, willfulness, and reckless indifference to Plaintiff's rights.

85.     Each individual Defendant is therefore liable for violating Plaintiff's rights by any other individual Defendant.

86.     The conspiracy was and is continuing in nature.

87.     As a direct and proximate result of the Defendant officers' conspiracy, Plaintiff suffered damages, including mental distress, anguish, humiliation, violation of his rights as set forth more fully above.

**Count IX – State Law Claim**
**Malicious Prosecution**

88.     Plaintiff realleges each of foregoing paragraphs as if fully stated herein.

89.     Defendants individually, jointly and/or in conspiracy, initiated and continued a malicious prosecution without probable cause against Plaintiff.

90.     The prosecution of Plaintiff terminated in his favor and in a manner that is indicative of innocence.

91.     Defendants' actions were committed in a willful and wanton manner.

19

92.    As a direct and proximate result of the Defendant officers' conduct, Plaintiff suffered damages, including mental distress, anguish, humiliation, violation of his rights as set forth more fully above.

## Count X – State Law Claim
## Respondeat Superior

93.    Plaintiff realleges each of foregoing paragraphs as if fully stated herein.

94.    Count XII is alleged against Defendant City of Chicago.

95.    In committing the acts alleged in this Complaint, each of the individual Defendant officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment.

96.    Defendant City of Chicago is liable as principal for all torts in violation of state law committed by its agents.

## Count XI – State Law Claim
## Indemnification

97.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

98.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

99.    Defendant officers are or were employees of the Chicago Police Department, who acted within their employment scope in committing the misconduct described herein.

20

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GABRIEL CHINCHILLA, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, Chicago Police Officers BOJAN SIMIC, RICHARD BANKUS, and Unknown Chicago Police Officers, awarding compensatory damages, costs, attorneys' fees, along with punitive damages against each of the individual Defendants, as well as injunctive and declaratory relief, and any other relief available under the law.

## JURY DEMAND

Plaintiff, GABRIEL CHINCHILLA, hereby demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

GABRIEL CHINCHILLA

/s/ Steven H. Fine

Steven H. Fine
LAW OFFICES OF STEVEN H. FINE
53 W. Jackson Blvd., Ste. 1215
Chicago, IL 60604
(312) 922-0855
steve@sfinelaw.com

/s/ Jonathan M. Brayman

Jonathan M. Brayman
BREEN & PUGH
53 W. Jackson Blvd., Ste. 1215
Chicago, IL 60604
(312) 360-1001
jbrayman@breenpughlaw.com