UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FIX, | ) | |
| | ) | Case No. 21-cv-2843 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| GABRIEL CHINCHILLA, | ) | |
| | ) | Case No. 21-cv-2846 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

In their amended complaints, plaintiffs John Fix and Gabriel Chinchilla bring numerous constitutional claims against the City of Chicago and certain Chicago Police Officers alleging that the police assaulted and beat them while they were attending a peaceful protest in the wake of George Floyd's murder in May 2020. *See* 42 U.S.C. § 1983. Relevant to this motion are plaintiffs' widespread policy and practice claims brought pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Before the Court are the City's motions to dismiss plaintiffs' *Monell* claims under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part the City's motions.

**Background**

Plaintiffs allege that in the wake of the police killings of George Floyd, Breonna Taylor, and others, Chicago residents peacefully protested in downtown Chicago over the weekend of May 29-

31, 2020. On the evening of May 31, 2020, plaintiff Fix joined a peaceful protest in the River North neighborhood of Chicago to express his opinion that the police must be held accountable to the communities they serve and to express his support for victims of police violence. When Fix was south of the Hubbard and Clark Street intersection, he observed a man lying on the sidewalk surrounded by police. When Fix attempted to assist him, police officers shoved and knocked Fix to the ground, after which they beat him repeatedly about his head and body with riot batons. The police officers continued to beat Fix while he was lying on the ground in a prone position. Fix has images of his beating from security cameras from nearby businesses.

Similarly, plaintiff Chinchilla alleges that on May 31, 2020, he joined peaceful protests in the River North area. He was also protesting for police accountability and to support victims of police violence. When he attempted to assist the man discussed above, police officers, many of whom were dressed in full riot gear, shoved Chinchilla from behind and knocked him to the ground. The police officers then beat him repeatedly about his head and body with riot batons. Chinchilla has video and still photos of his beating taken from security cameras. A video of his beating was broadcast on ABC 7 news that evening.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

"[T]o prevail on a § 1983 claim against a municipality under *Monell*, a plaintiff must challenge conduct that is properly attributable to the municipality itself." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). A plaintiff may demonstrate municipal liability by showing that the constitutional deprivation was caused by: (1) an express municipal policy; (2) a *de facto* widespread custom or practice; or (3) a decision by a municipal agent, who had final policymaking authority. *Stewart v. Wexford Health Sources, Inc.,* 14 F.4th 757, 765 (7th Cir. 2021). In addition, plaintiffs must show that the City's action was the "moving force" behind their constitutional deprivations (causation) and the City was "deliberately indifferent" (culpability) to plaintiffs' constitutional rights. *LaPorta*, 988 F.3d at 986-87.

In their amended complaints, plaintiffs allege that the City has a *de facto* municipal policy and widespread practice of using unnecessary force and covering up the use of excessive force that caused plaintiffs' constitutional injuries. They explain that the City's *de facto* policy involves police officers instigating false criminal charges against individuals to create false narratives justifying the use of excessive force.

The City first argues that plaintiffs have failed to sufficiently allege the "widespread practice" element under the federal pleading standards. The Court notes, however, that even after *Iqbal* and *Twombly*, "it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017). As Judge Easterbrook explained in *Chapman*, "it is enough to plead a plausible claim, after which a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550

3

U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted)). Furthermore, there is "no heightened pleading rule [that] requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 11, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014).

A widespread practice may be established in several ways, including "a prior pattern of similar constitutional violations." *Fields v. City of Chicago*, 981 F.3d 534, 562 (7th Cir. 2020). The purpose of setting forth a pattern of similar constitutional violations is to show that the City had notice of the widespread practice that would, in turn, give the City an opportunity to remedy the situation. *See id.*; *Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293, 303 (7th Cir. 2010). In their amended complaints, plaintiffs have alleged a pattern of similar incidents of Chicago Police Officers' unconstitutional use of excessive force and cover-up both within the context of protests and otherwise. These similar incidents are discussed in the Consent Decree in *Illinois v. City of Chicago*, No. 17-cv-6290, 2019 WL 398703, at *1 (N.D. Ill. Jan. 31, 2019) (Dow, J.), which addressed the Chicago Police Department's ("CPD") repeated pattern of using excessive force. Other similar incidents are noted in the United States Department of Justice's ("DOJ") official report, "Investigation of the Chicago Police Department," published on January 13, 2017, which concluded that "[o]ne way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts." Plaintiffs further rely upon the 2016 Chicago Police Accountability Task Force Recommendations for Reform ("PATF" report). To give context, in December 2015, former Mayor Rahm Emanuel created a task force to review the Chicago Police Department's systems of accountability, oversight, and training that were in place at that time. Both the DOJ and PATF reports discuss the inadequacy of investigation, discipline, and supervision of use-of-force complaints.

Plaintiffs also highlight Chicago Police Officers' prior use of excessive force in the context

4

of protests and demonstrations, including protests against the Iraq war in 2003, anti-immigration protests in 2011, and anti-Trump protests in 2016. In addition, plaintiffs provide support for their widespread practice claim based on the same May 2020 demonstrations where Michael Drake, a legal observer, was beaten by Chicago Police Officers and arrested. Furthermore, the Court takes judicial notice that the City of Chicago Office of Inspector General filed a report on February 18, 2021 criticizing the CPD's use of force during the May 2020 demonstrations.

Read as a whole, plaintiffs' amended complaints plausibly allege that the City was on notice of a widespread practice of Chicago Police Officers using excessive force and the resultant cover-up. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Plaintiffs have alleged factual details concerning not only the excessive force they experienced, but also the CPD's historic failures in this respect, raising an inference that they are not alone in suffering constitutional injuries resulting from the City's widespread practice. In sum, plaintiffs' allegations contain more than isolated incidents of similar police misconduct.

Next, the City maintains that plaintiffs have failed to adequately allege the "deliberate indifference" or culpability element of their *Monell* claim. "A municipality has the requisite degree of culpability if it acts with deliberate indifference to the known or obvious consequences of its action." *Levy v. Marion County Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019). To show deliberate indifference, a municipality must be aware of the risk created by the unlawful widespread custom or practice and fail to take appropriate steps protect plaintiffs. *Thomas,* 604 F.3d at 303.

Here, the City asserts that it has taken actions to protect plaintiffs, including the establishment of the Civilian Office of Police Accountability ("COPA") in 2016, which replaced the City's Independent Police Review Authority ("IPRA"). The City's argument seeks to refute plaintiffs' allegations instead of challenging their sufficiency. It is well-settled that a "defendant

5

cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations" because "[t]he attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Smith v. Burge*, 222 F.Supp.3d 669, 691 (N.D. Ill. 2016) (St. Eve, J.) (citation omitted). In any event, plaintiffs allege that they reported their beatings to COPA and that COPA has failed to maintain any communication with them.

Meanwhile, plaintiffs have set forth sufficiently detailed facts that the City's policymakers were aware of Chicago Police Officers using excessive force based on their allegations of the unlawful widespread practice discussed above. Because Chicago Police Officers have continued to use excessive force, even after the City's efforts to remedy the situation, there is a reasonable inference that the City's actions to combat this unlawful conduct have been inadequate. Although plaintiffs did not specifically name a final policymaker for the City who was aware of the widespread practice and failed to act, this omission does not make their allegations implausible as the City argues, especially because the parties have yet to take discovery.

Keeping in mind that plaintiffs need not allege legal elements and facts that correspond to each element, *see Chapman*, 875 F.3d at 848, the City next argues that plaintiffs have not adequately alleged the "moving force" or causation element of their claims. In making this argument, the City fails to look at plaintiffs' allegations as a whole, in which plaintiffs allege that the CPD's code of silence shields and protects police officers allowing them to shape false narratives of their use of excessive force. Plaintiffs' allegations and reasonable inferences suggest that this widespread practice allows Chicago Police Officers to engage in unlawful conduct without facing consequences. Construing the facts in plaintiffs' favor, because they have plausibly alleged that the widespread practice allows the officers to engage in excessive force with impunity, they have sufficiently alleged that the practice was the moving force behind the constitutional violations they suffered. *See, e.g.,*

6

*Johnson v. City of Chicago*, No. 20 C 7222, 2021 WL 4438414, at *6 (N.D. Ill. Sept. 28, 2021) (Ellis, J.); *Ferguson v. Cook County, Illinois,* No. 20-cv-4046, 2021 WL 3115207, at *12 (N.D. Ill. July 22, 2021) (Dow, J.).

Last, the City contends that plaintiffs failed to provide any factual specificity to support their failure to train claim. *See Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). Although plaintiffs mention former cases involving failure to train allegations, their allegations concerning their own failure to train claims are cursory, at best. *See Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) ("Municipal failure claims are [] available only in 'limited circumstances.'") (internal citation omitted). Equally important, plaintiffs failed to respond to the City's argument resulting in the abandonment of this claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). The Court grants the City's motion in this respect.

**Conclusion**

For these reasons, the Court grants in part and denies in part defendants' partial motions to dismiss plaintiffs' *Monell* claims [44, 30].

IT IS SO ORDERED.

Date: 1/10/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

7